IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FREDDA L. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:18-CV-045-SMD |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Fredda L. Jones ("Jones") applied for disability insurance benefits under Title II of the Social Security Act ("the Act") alleging a disability date of February 21, 2010. (R. 152-53). The application was initially denied. (R. 83-88). A hearing was held before the Administrative Law Judge ("ALJ"). (R. 40-70). The ALJ rendered an unfavorable decision on December 23, 2015. (R. 20-35). The Appeals Council denied Plaintiff's request for review. (R. 1-6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 11); Def.'s Consent to Jurisdiction (Doc. 10). After careful scrutiny of the record and

briefs, for reasons herein explained, the undersigned concludes that the Commissioner's decision is due to be REVERSED and REMANDED.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*.*" *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a

claim for DIB and a claim for SSI are identical. *See Strickland v. Harris*, 615 F.2d 1103, 1105-06 (5th Cir. 1980). Therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step four. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step one through Step four. At Step five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was thirty-one years old when her disability insured status expired on September 30, 2015. (R. 32, 141). At the time of her application, Plaintiff had completed two years of college, (R. 168), and, at the time of the hearing, she was finishing her senior year at Troy University in Dothan, Alabama. (R. 47-48). Plaintiff has past relevant work as a cook, carhop, and production worker. (R. 65-66, 175-82, 205-06). She also has a service-connected disability rating from the Department of Veterans' Affairs ("VA") of fifty percent for Major Depressive Disorder. (R. 646). In his Decision, the ALJ does not specifically discuss Plaintiff's VA disability rating. Rather, the ALJ only noted that Plaintiff "reported trying to get her service connection VA rating up to 100%." (R. 30). The ALJ gave "no weight" to the mental assessment of the clinical psychologist retained to perform Plaintiff's consultative examination, Dr. Fernelle L. Warren ("Dr. Warren"). (R. 32). However, the ALJ gave "great weight" to the "treatment histories, diagnoses and medication management" of the physicians and staff at the VA clinic. (R. 333).

In evaluating Plaintiff's application, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. (R. 20-22). The ALJ found that, through the date last insured of September 30, 2015, Plaintiff's disorders of the back/lumbar spine, major depressive disorder, and post-traumatic stress disorder ("PTSD") were severe impairments, but that they did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 22-25). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except she could occasionally operate foot controls

6

with the left foot and is limited to simple, routine, and repetitive tasks with only occasional interaction with the public. (R. 25-33). The ALJ next compared Plaintiff's RFC to the physical and mental demands of her past relevant work and found that she was unable to perform any of her past jobs. (R. 33). At the final step of the sequential evaluation, the ALJ found, with the benefit of testimony from a vocational expert (R. 66, 68-69), that through the date last insured, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as production assembler, cleaner/house, and garment folder. (R. 34). The ALJ therefore found that Plaintiff had not been disabled at any time from February 21, 2010, the alleged onset date, through September 30, 2015, the date last insured. (R. 34).

## V. MEDICAL HISTORY

Plaintiff and her husband were both in the military and stationed at the same base in Afghanistan. Following her husband's death in Afghanistan in June 2009, Plaintiff was treated regularly at the Lyster Army Hospital psychiatry and psychology clinics for "bereavement without complications" and "adjustment disorder with mixed emotional features: Rule out PTSD" and "insomnia." (R. 459, 450, 448,). Plaintiff was also treated for "major depression recurrent moderate" and was prescribed trazadone, ambien, and sertraline. (R. 441, 438). By October, 2009, Plaintiff reported "feeling better" and "more motivated" and a "stable mood." (R. 424, 412, 404). However, in December 2009, Plaintiff reported "depressed mood recently associated with first celebration of holidays and [husband's] birthday (26 Dec) since his death in June." (R. 399, 393). In February

2010, Plaintiff's diagnoses included "moderate recurrent major depression" and "bereavement without complications." (R. 379, 375).

In March 2010, Plaintiff's diagnoses included "major depression recurrent moderate" and "chronic post-traumatic stress disorder" and "bereavement without complications." (R. 373, 372). PTSD symptoms were reported in May and June, 2010. (R. 367, 363). In October 2010, Plaintiff was seen again for complaints of "depression, anxiety, bereavement and PTSD symptoms." (R. 351). She reported having discontinued medication about three months earlier, but desired to restart taking medication. *Id.* In June 2011, Plaintiff was seen for "major depression, recurrent" and instructed on importance of continuing daily medications. (R. 335).

In July 2011, Plaintiff was treated for injuries she received in an altercation where she was hit in the eye and bitten on the forearm. (R. 327). In May 2012, Plaintiff was seen as a walk-in appointment and reported she discontinued her medications about a year ago and reported "significant problems with sleep, decreased concentration and headaches that interfere with focus on college courses." (R. 320). In June 2012, she was again seen at Lyster Army Hospital psychiatry and reported taking medications on and off for a period of time, sought a refill of Trazadone for sleep, but refused a refill prescription for Zoloft, which she said made her sick. (R. 318-319).

In July 2015, Plaintiff was seen a number of times at the VA Outpatient Clinic. On one visit, she reported calling the crisis line because she "had a breakdown. I was ready to die, and someone told me to text that number." (R. 566). She reported that she asked her significant other to leave their house, and he threatened to hurt her. *Id.* She also reported

discontinuing Wellbutrin a couple of months earlier. (R. 573). Plaintiff further reported working on a bachelor's degree through Troy University and enjoying traveling, but that she was still dealing with "anger issues." (R. 575). She was also treated for chronic headache and right-side pain. (R. 577).

In December 2015, Plaintiff discussed with a clinical social worker at the VA Outpatient Clinic a recent call to the crisis line and Plaintiff relayed "homicidal ideations towards her significant other and others." (R. 604, 605). In November 2015, Plaintiff reported she felt better because she was "working out" and was on "good terms" with her boyfriend. (R. 607). In September 2015, Plaintiff reported that things were going "alright" and that her medications were working well for her. (R. 625).

A mental status examination performed on June 21, 2016 revealed Plaintiff to be "alert and oriented x3"; her speech to be "non-pressured, with normal rate and rhythm; her thought process to be "logical, goal-directed coherent, no flight of ideas"; her thought content included "no delusions or obsessions, no objective evidence of psychosis noted"; "no auditory/visual hallucinations"; her "immediate and remote memory [were] intact" and her insight and judgment were "fair." (R. 647-648). The diagnosis was "Depression NOS, Axis II Cluster B features." (R. 648). The plan was to continue psychotropic medicines as prescribed and "add Setraline for anxious components." (R. 648).

On September 6, 2016, Dr. Warren completed a mental health assessment and found mild to moderate limitations in Plaintiff's ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (R. 680). He attributed these limitations to Plaintiff's "PTSD and mild

depression." *Id.* Dr. Warren also reported that Plaintiff had moderate to marked limitations in dealing appropriately with the public, supervisors, co-workers and responding to work situations and changes in work setting. (R. 681). He attributed these limitations to Plaintiff's "traumatic events during service in Afghanistan War as well as hearing that her husband was killed while sleeping." *Id.* Also, he opined that Plaintiff's migraines affect her ability to concentrate and respond. *Id.* Dr. Warren further opined that her prognosis was "poor" and that "a favorable response to treatment for her depression and anxiety is not expected within the next 6 to 12 months." (R. 684). Finally, he opined that Plaintiff's "ability to remember and carry out instructions and respond appropriately to supervisors, co-workers, and work pressures in a work setting is mildly to moderately impaired." (R. 685).

## VI. PLAINTIFF'S ARGUMENT

Plaintiff argues that the ALJ erred in giving "great weight" to the opinion of consultative examiner, Dr. Warren, but discarding parts of the opinion that would support a finding of disability. (Doc. 13) at 2. Specifically, Plaintiff asserts that the ALJ failed to explain his reasons for giving "no weight" to Dr. Warren's mental assessment of Plaintiff. *Id.* at 4. Plaintiff avers that the ALJ's conclusion that Dr. Warren's assessment was "inconsistent with his own evaluation and inconsistent with the treating VA Clinic" is unsupported by the evidence. *Id.*

## VII. ANALYSIS

Plaintiff states that she has service-connected disability rating for PTSD of fifty percent. (Doc. 13) at 4.[1] However, the ALJ does not specifically discuss Plaintiff's VA disability rating. Rather, the ALJ noted that Plaintiff "reported trying to get her service connection VA rating up to 100%." (R. 30). He further noted when giving "no weight" to Dr. Warren's mental assessment that he instead gave "[g]reat weight . . . to the physicians and staff at Department of Veterans Affairs Clinic treatment histories, diagnoses and medication management." (R. 32-33). Although Plaintiff does not explicitly raise the ALJ's failure to specifically address her VA disability rating, the undersigned addresses the issue to determine whether the ALJ applied the proper legal standards. *Jones,* 190 F.3d at 1228; *Keeton*, 21 F.3d at 1066.

The law is clear; although a VA disability rating is not binding on the ALJ, it should be given "great weight."[2] *Brady v. Heckler,* 724 F. 2d 914, 917-921 (11th Cir. 1984). Although the ALJ is not required to give the VA's disability determination controlling weight, the ALJ must "expressly consider" and "closely scrutinize" the VA's determination in his opinion. *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.,* 673 F. App'x 902, 904 (11th Cir. 2016); *Adams v. Comm'r of Soc. Sec.,* 542 F. App'x 854, 857 (11th Cir. 2013). If the ALJ discounts the VA's disability determination, he "must give specific reasons" for his

---

1 The medical record to which Plaintiff cites reports a 50% service connected disability for "major depressive disorder" not PTSD. (R. 646). While the undersigned notes that Plaintiff was treated for PTSD symptoms following her return from Afghanistan, (R. 363, 367, 375), the record shows no VA disability rating for PTSD. Plaintiff's VA Decision Letter does not appear to be a part of the record.
2 Indeed, a disability finding under the Social Security Act, requires Plaintiff to satisfy a more stringent standard. *See Pearson v. Astrue,* 271 F. App'x 979, 981 (11th Cir. 2008) citing 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

decision. *Brown-Gaudet,* 673 F. App'x at 904; *see also Ostborg v. Comm'r of Soc. Sec.,* 610 F. App'x 907, 914 (11th Cir. 2015) (finding an ALJ's determination that the VA's decision "had little bearing" on Plaintiff's Social Security claim was not reversible error where "[t]he ALJ's specific reasons for discounting the VA's determination show he considered and closely scrutinized that determination").

Here, the ALJ did not specifically mention or discuss Plaintiff's fifty percent VA disability rating for Major Depressive Disorder. (R. 30, 646). The ALJ neither expressly stated the weight he afforded the VA determination, nor did he indicate that he "expressly considered and closely scrutinized" that determination. *Adams*, 542 F. App'x at 857. Thus, the undersigned concludes that the ALJ erred as a matter of law by "summarily ignor[ing] the VA's determination." *Brown-Gaudet-Evans*, 673 F. App'x at 904. Because the ALJ failed to give specific reasons for discounting the VA determination, and did not "show that he considered and closely scrutinized that determination," the Court must reverse and remand for proper consideration of the Plaintiff's VA disability rating. *Ostborg,* 610 F. App'x at 914. This is true even where, as here, the ALJ included a thorough recitation of the medical evidence of record and mentioned that Plaintiff had a VA disability rating. (R. 27-31). *Brown-Gaudet-Evans*, 673 F. App'x at 904.

Accordingly, the undersigned concludes that this case is due to be remanded so that the ALJ can properly consider the VA's disability determination. *Id.* (citing *Brady,* 724 F.2d at 921)*; see also, Cornelius v. Sullivan,* 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted

mandates reversal."). Further, since the Court has concluded that the ALJ applied the incorrect law with respect to the VA disability rating and failed to explain his reasons for discounting it sufficiently, Plaintiff's failure to raise this specific issue does not change the undersigned's conclusion.

Additionally, the relevant case law requires the undersigned to consider whether substantial evidence supports the ALJ's opinion, even where the ALJ fails to properly consider a VA disability determination. *Brown-Gaudet-Evans*, 673 F. App'x at 905 (holding substantial evidence did not support ALJ's finding discounting Plaintiff's credibility as to her complaints of fibromyalgia); *Brady,* 724 F. 2d at 921 (holding substantial evidence did not support ALJ's finding of no severe impairment); *Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir. 1981) (holding no substantial evidence that Plaintiff was "capable of performing substantial gainful employment" and insufficient weight given to VA rating).

Here, the ALJ concluded Plaintiff retained the RCF to perform light work, except she "can perform occasional operation of foot controls with the left foot" and "is limited to simple routine and repetitive tasks with only occasional interaction with the public." (R. 25). An RFC assessment is used to determine a claimant's capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). An RFC assessment will be made based on all relevant evidence in the case record. *Id.*; *Lewis*, 125 F.3d at 1440. The undersigned concludes that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ did not expressly and specifically

13

consider how the VA disability determination impacted his finding of the Plaintiff's RFC. *Rodriguez*, 640 F.2d at 686.

Plaintiff urges the Court to remand this case with an order that the Commissioner shall award benefits, but the undersigned declines that request. (Doc. 13) at 5. Because the VA's disability determination is not binding on the Commissioner, it is not a certainty that Plaintiff is entitled to an award of benefits based solely on the VA's determination. *see Brady*, 724 F.2d at 921. The Court will not award benefits where it is possible that the ALJ might reach an adverse decision even after assigning "great weight" to the VA's disability decision. Because the undersigned concludes that the decision of the ALJ is due to be remanded on this basis, the undersigned pretermits consideration of Plaintiff's remaining argument.

## VIII. CONCLUSION

For all of the reasons given above, the undersigned concludes that the decision of the Commissioner is REVERSED and that this matter is to be REMANDED to the Commissioner for further proceedings consistent with this opinion. A separate judgment will issue.

DONE this 2nd day of August, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE